UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| PNC Bank, National Association, *successor by merger to PNC Equipment Finance, LLC* d/b/a Hyundai Translead Trailer Finance, | File No. 25-cv-903 (ECT/DJF) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Viewpoint Global LLC and Andrew Arumba, | |
| Defendants. | |

---

Terrance J. Wagener, Messerli & Kramer P.A., Minneapolis, MN, for Plaintiff PNC Bank, National Association.

---

In this breach-of-contract and replevin action, Plaintiff PNC Bank alleges that Defendant Viewpoint Global LLC failed to make timely payments on loans made to finance Viewpoint's purchase of seven trailers. Defendant Andrew Arumba is Viewpoint's sole member, and he personally guaranteed the loans. PNC seeks entry of a default judgment against Viewpoint and Mr. Arumba. The motion will be granted, though not exactly as PNC requests.

The basic process for determining whether a default judgment should be entered is straightforward. The entry of default means that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2688.1 (4th ed. & May 2025 update) (footnotes omitted). Next, it must be determined

whether the taken-as-true factual allegations of the complaint "constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (quoting *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)).  If the taken-as-true allegations of the complaint constitute a legitimate cause of action, then the amount of the default judgment must be ascertained.  *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000)).

Start with the amended complaint's taken-as-true factual allegations.  On or about April 19, 2021, PNC and Viewpoint entered into a financing agreement.  Am. Compl. [ECF No. 5] ¶ 9; ECF No. 1-2.  Under the financing agreement, PNC would finance Viewpoint's acquisition of seven trailers sold by Hyundai Translead, Inc.,[1] and Viewpoint would pay PNC seventy-two consecutive monthly payments of $3,807.59 plus taxes.  Am. Compl. ¶¶ 9–10; ECF No. 1-2 at 1.  PNC obtained a security interest in the trailers.  Am. Compl. ¶ 11; *see* ECF No. 1-2 ¶ 6.  PNC perfected its security interest "by recording its lien on the Certificates of Title for the Equipment."  Am. Compl. ¶ 12; *see* ECF No. 1-3 (showing recorded liens on each trailer).  Mr. Arumba also executed a personal guaranty of Viewpoint's obligations under the agreement.  Am. Compl. ¶ 13; *see* ECF No. 1-4.  In August 2024, Viewpoint failed to make a loan payment and defaulted.  Am. Compl. ¶ 14; *see* ECF No. 1-2 ¶ 13 (outlining conditions of default, including failure to make timely payment).  Once Viewpoint defaulted, the financing agreement allowed PNC to "declare

---

[1] The vehicle identification numbers for the trailers are 3H3V532K0NJ077001, 3H3V532K2NJ077002, 3H3V532K4NJ077003, 3H3V532K6NJ077004, 3H3V532K8NJ077005, 3H3V532KXNJ077006, and 3H3V532K1NJ077007.  Am. Compl. ¶ 9; ECF No. 1-2 at 4; ECF No. 1-3 at 1, 3, 5, 7, 9, 11, 13.

due and payable . . . any and all amounts which may be then due and payable by [Viewpoint] to [PNC] under this Loan Agreement, plus . . . all Loan Payments remaining through the end of the Loan Agreement term, discounted at the higher of 3% or the lowest rate allowed by law." ECF No. 1-2 ¶ 14. The thirty-four remaining payments with the discount applied total $123,960.33. Am. Compl. ¶ 17. The financing agreement further entitled PNC to prejudgment interest at 18% per annum, $50 in insufficient funds fees, and attorneys' fees and costs. Am. Comp. ¶¶ 18, 20, 22; *see* ECF No. 1-2 ¶¶ 3, 14, 19.

PNC filed its complaint in this case on March 12, 2025, *see* ECF No. 1, and the operative amended complaint on March 19, *see* ECF No. 5. It asserted five causes of action: breach of contract against Viewpoint, Am. Compl. ¶¶ 23–29; breach of guaranty against Mr. Arumba, *id.* ¶¶ 30–33; claim and delivery violation under Minnesota law, *id.* ¶¶ 34–43; and turnover of collateral under Minnesota law, *id.* ¶¶ 44–49, and (in the alternative) Pennsylvania law, *id.* ¶¶ 50–55.[2] Viewpoint and Mr. Arumba were served by

---

[2] The Amended Complaint accounts for the possibility that Pennsylvania law would apply to this action. *See* Am. Compl. ¶ 51. This is because the parties agreed that all disputes over the financing agreement would be governed by Pennsylvania law and heard in a state or federal court in Pennsylvania. *See* ECF No. 1-2 at 1. Defendants have waived their ability to argue a choice-of-law or forum-selection defense. *See Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) (noting that defenses are waived when not "seasonably" asserted, including on default); *Botman Int'l, B.V. v. Int'l Produce Imps., Inc.*, 205 F. App'x 937, 941 (3d Cir. 2006) (finding defendants waived choice-of-law argument on appeal by failing to raise it at summary judgment); *Provision Interactive Techs., Inc. v. Prosperity Invs., LLC*, No. CV 18-6547 FMO (FFMx), 2019 WL 6729686, at *2 (C.D. Cal. Oct. 18, 2019) ("[D]efendants waived the subscription agreements' forum selection clauses by failing to appear in this action."). Though Minnesota law will be applied, it would make no difference if Pennsylvania law were applied. There is no material difference between Minnesota and Pennsylvania breach-of-contract law. *See Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011) (Minnesota elements); *Meyer, Darragh, Buckler,*

April 14. ECF No. 8. On May 22, Magistrate Judge Dulce J. Foster ordered PNC to notify Defendants of their duty to respond to the amended complaint, and, if they did not respond, she ordered PNC to file an application for entry of default. ECF No. 9. Defendants did not respond, PNC applied for entry of default, and the Clerk entered default on July 10. ECF Nos. 13, 17. The next day PNC moved for default judgment. ECF No. 19. PNC seeks judgment against Defendants in the amount of $153,773.14, an order directing Defendants to deliver and surrender the seven trailers, an order allowing PNC to take possession of the trailers, a writ of replevin to the U.S. Marshal or Washington County Sheriff directing them to use necessary force to take possession of the trailers and deliver the trailers to PNC, and an order allowing PNC to lease or sell the trailers at a public or private sale. ECF No. 19 ¶¶ 1–6; *see* ECF No. 26 at 1 (updating monetary request).

PNC has plausibly alleged breach of contract and breach of guaranty. In Minnesota, breach of contract has three elements: "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). "A guaranty agreement is interpreted and enforced in the same manner as other contracts." *S.M. Hentges & Sons, Inc. v. Mark Elliot Homes, LLC*, No. A22-0736, 2023 WL 125847, at *9 (Minn. Ct. App. Jan. 9, 2023) (citing *Am. Tobacco Co. v. Chalfen*, 108 N.W.2d 702, 704 (Minn. 1961)). Here, all elements are met. The

---

*Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (Pennsylvania elements). And Minnesota and Pennsylvania's repossession statutes are identical. *Compare* Minn. Stat. § 336.9-609, *with* 13 Pa. Cons. Stat. § 9609.

4

financing agreement is a contract, Mr. Arumba executed a guaranty, Defendants' failure to make timely payment was a breach, and PNC suffered injury. PNC has shown it performed conditions precedent by financing Viewpoint's purchase of the trailers. PNC is entitled to default judgment.

PNC also has plausibly alleged a claim under the Minnesota repossession statute, Minn. Stat. § 336.9-609. Am. Compl. ¶¶ 44–49. A secured party may "take possession of the collateral" and "render equipment unusable and dispose of collateral on a debtor's premises," pursuant to judicial process, or without judicial process "if it proceeds without breach of the peace." Minn. Stat. § 336.9-609(a)–(b). "After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." Minn. Stat. § 336.9-610(a). Taking the factual allegations as true, PNC is a secured party and is entitled to take possession of the trailers with a judicial order under the statute's plain meaning.

When a defendant's liability is established, a plaintiff seeking a default judgment "must still prove its actual damages to a reasonable degree of certainty." *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001). "A district court may determine damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly." *Radisson Hotels Int'l, Inc. v. Fairmont Partners LLC*, No. 19-cv-1176 (WMW/BRT), 2020 WL 614810, at *2 (D. Minn. Feb. 10, 2020); *see also Raines v. Steel Rock Com., LLC*, No. 20-cv-2124 (ECT/KMM), 2021 WL 7186823, at *1 (D. Minn. Aug. 31, 2021).

5

PNC has itemized its damages this way:

|   |   |
|---|---:|
| a. Principal | $123,960.33 |
| b. Prejudgment Interest | 24,409.34 |
| c. Messerli Kramer fees and costs | 3,843.47 |
| d. Darcy & Devassy fees and costs | 1,510.00 |
| e. NSF fee | 50.00 |

ECF No. 26 at 1.[3] The sum of these values is $153,773.14. Consider each in turn.

(a) Principal. PNC seeks $123,960.33 in "actual damages, comprising of payment of the thirty-four (34) rent payments remaining, discounted to present value at 3%." Am. Compl. ¶ 17. This amount is warranted by the financing agreement, *see* ECF No. 1-2 ¶ 14, and will be awarded.

(b) Prejudgment interest. PNC seeks $24,409.34 in prejudgment interest. *See* Am. Compl. ¶ 18; ECF No. 26 at 1. That number represents "18% per annum from the date of default of August 1, 2024 until the entry of judgment," projecting entry of judgment on September 3, 2025. Am. Compl. ¶ 18; *see* ECF No. 26 at 1. September 3, 2025, is 398 days after August 1, 2024. PNC calculates the per diem rate to be $61.33. ECF No. 21 ¶ 9 ("Principal of $123,960.33 @18% annual rate = $22,312.86/365 days = $61.33 per diem . . . ."). This amount will be adjusted in two small ways. First, the multiplication is slightly off—the per diem rate is slightly lower, $61.13. Second, since judgment will be entered after September 3, the new per diem rate will be extended an additional day. The amount

---

[3]   Earlier, PNC also requested Late Charges and Repossession and Site Visit Fees. *See* ECF No. 21 ¶ 5. PNC has since waived these requests. *See* ECF No. 26 at 1.

awarded in prejudgment interest will be $24,390.87—$61.13 times 399 (the number of days from August 1, 2024, to September 4, 2025) equals $24,390.87.

(c) Messerli Kramer fees and costs.  PNC seeks $3,843.47 in legal fees and costs billed by Messerli & Kramer P.A.  ECF No. 21 ¶ 10(c).  Counsel has supplied a declaration with billing statement.  ECF No. 21 at 4–7.  One attorney worked on this matter, Terrance J. Wagener, and his rate was $300/hour for 10.7 hours.  *Id.* at 4–6.  Mr. Wagener has worked in equipment finance litigation and commercial collection for over fourteen years. *Id.* ¶ 6.  Given Mr. Wagener's experience and the nature of this matter, those rates and hours billed are reasonable.  In a similar matter in 2023 another judge in this District awarded this attorney a $300 hourly rate.  *See PNC Bank, Nat'l Ass'n v. One Stop Ctr., Inc.*, 23-cv-2245 (PJS/TNL), ECF No. 25 ¶ 2 (D. Minn. Dec. 28, 2023); *see id.* ECF No. 18 ¶ 3 (stating rate).  Costs amounted to $633.47 for the filing fee and a "Messenger Service," also reasonable.  *Id.* ¶ 7.  This fee request will be awarded.

(d) Darcy & Devassy fees and costs.  PNC requests $1,510 in legal fees from the firm Darcy & Devassy PC.  *Id.* ¶ 10(d).  Shareholder C. Randall Woolley submitted a declaration disclosing rates and hours billed by Darcy & Devassy PC.  ECF No. 20.  Mr. Woolley is a partner at the firm and a 2003 graduate of the Loyola University of Chicago School of Law, and he has worked in equipment finance litigation and secured transactions for over twenty years.  *Id.* ¶ 4.  He billed $295 per hour in this matter.  *Id.* ¶ 5.  As with Mr. Wagener, Mr. Woolley's rate is reasonable given his experience and the nature of this matter.  *See One Stop Ctr.*, ECF No. 17 ¶ 6 (same attorney billing same rate); *id.* ECF No. 25 ¶ 2 (awarding $295 rate).  Two paralegals performed work as well, billing $145 per

7

hour.  ECF No. 20 ¶¶ 4–5.  These rates are reasonable.  *See Keating v. Frederick Debt Mgmt., LLC*, No. 24-cv-3659 (ECT/EMB), 2025 WL 2506125, at *3 (D. Minn. Sep. 2, 2025) (finding that a $190-to-$210 rate for paralegals was "comparable to, or at least not unreasonably greater than, paralegal rates approved in this District" (quoting *Major v. Halliday Watkins & Mann, P.C.*, No. 24-cv-1897 (ECT/DJF), 2024 WL 5233149, at *3 (D. Minn. Dec. 27, 2024))).  It was reasonable for Darcy & Devassy to work 7.1 hours on this case.  All told, the $1,510 fee request is reasonable and will be awarded.

(e) NSF fees.  PNC requests $50 in insufficient funds fees, Am. Compl. ¶ 20.  The financing agreement allows PNC to recover this amount for breach.  *See* ECF No. 1-2 ¶ 3 ("We [PNC] may charge you [Viewpoint] a return check or non-sufficient funds charge of $50.00 for any payment which is returned by the bank for any reason (not to exceed the maximum amount permitted by law).").  This amount is reasonable and will be awarded.  Adding the individual awards makes a sum of $153,754.67.

## ORDER

Accordingly, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiff PNC Bank, National Association's motion for default judgment [ECF No. 19] is **GRANTED**.

2. The Clerk of Court shall enter default judgment against Defendants Viewpoint Global LLC and Andrew Arumba, and in favor of Plaintiff PNC Bank, National Association, in the amount of $153,754.67.

3. Defendants Viewpoint Global LLC and Andrew Arumba shall immediately deliver and surrender to Plaintiff PNC Bank, National Association, the seven Hyundai Composite Dry Van Trailers ("Equipment") with these vehicle identification numbers:

- 3H3V532K0NJ077001
- 3H3V532K2NJ077002
- 3H3V532K4NJ077003
- 3H3V532K6NJ077004
- 3H3V532K8NJ077005
- 3H3V532KXNJ077006
- 3H3V532K1NJ077007

4. If Defendants Viewpoint Global LLC and Andrew Arumba fail to deliver and surrender the Equipment, Plaintiff PNC Bank, National Association, or its agent is entitled to seize and take possession of the Equipment.

5. Plaintiff PNC Bank, National Association, may lease or sell the Equipment at a public or private sale.

6. Plaintiff's counsel is **ORDERED** to mail a copy of this Opinion and Order to Defendants by both first-class mail and certified mail, return receipt requested, which shall constitute due and proper service of this Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 4, 2025

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court